**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>v.<br><br>CARLOS FERNANDO DIAZ-DIAZ,<br><br>                     Defendant. | Case No. 17-cr-03505-BAS-1<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT (ECF No. 74)** |

On May 2, 2018, this Court sentenced Mr. Pierson to 78 months in custody for possession of child pornography. (ECF No. 68.) Mr. Pierson now seeks modification of his sentence to time served in light of the risk he faces from COVID-19. (ECF No. 74 ("Defendant's Motion").) The Government opposes. (ECF No. 75 ("Government's Response").) For the reasons stated below, the Court **DENIES** Mr. Pierson's motion.

**I.    BACKGROUND**

Mr. Pierson is a 45-year-old self-employed computer graphic designer who began creating pornographic animation from his home office. (ECF No. 54 ("PSR") ¶ 12.) At the time of his arrest, he had more than 600 images of child pornography on his computer, including images depicting bondage and sadistic and masochistic conduct related to the

child victims. (PSR ¶ 31.) Mr. Pierson has a prior domestic violence conviction from 2002. (PSR ¶ 49.)

In 2016, Mr. Pierson was diagnosed with early stage fatty liver disease because of his alcohol abuse. (Defendant's Motion, Exh. B.) However, since that diagnosis, there is no evidence that the condition has progressed in any way. His medical records do not indicate that he is currently receiving any medical treatment for this condition, nor does he appear to be exhibiting any adverse symptoms. (*Id.*, Exhs. B and C.)

Mr. Pierson has been housed at FCI Terminal Island, which had a severe outbreak of COVID-19. Since March of this year, the Bureau of Prisons ("BOP") reported 595 inmates and 26 staff from FCI Terminal Island were diagnosed with COVID-19. BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Oct. 21, 2020). Ten inmates died. *Id.* However, Terminal Island has made great strides in complying with CDC recommendations for correctional facilities, and, as a result, the number of active cases has drastically decreased. (*See* Defendant's Motion, Exh. D; Government's Response, Exh. 2.) Currently the BOP reports zero inmates and three staff with active cases of COVID-19. BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Oct. 21, 2020). At the height of the outbreak, Mr. Pierson was diagnosed with COVID-19, although his medical records indicate that he was asymptomatic. (Defendant's Motion, Exhs. B and C.) On June 26, 2020, Mr. Pierson requested compassionate release from the Warden at FCI Terminal Island. (Defendant's Motion, Exh. E.) The Warden denied that request on July 13, 2020. (Government's Response, Exh. 1.) There is no evidence that Mr. Pierson appealed that denial.

## II.   ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, after he has exhausted his administrative remedies, if "considering the factors set forth in [18 U.S.C.] section 3553(a)," the court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission." *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, at *4 (S.D.N.Y. 2020). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020).

### A. Exhaustion

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *Ng Lap Seng*, 459 F. Supp. 3d 527, at *6 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id*. This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, Mr. Pierson does not demonstrate that either of these routes has been followed. Although he filed a petition, the Warden did act within 30 days, and Mr. Pierson

failed to appeal this refusal. Nonetheless, the Government may waive the administrative exhaustion requirements by asking the court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, 459 F. Supp. 3d 527, at *6. The Government, in its Response, does not raise the issue of failure to exhaust administrative remedies and, instead, proceeds directly to the substantive issues. Therefore, the Court construes this as a waiver of the administrative exhaustion requirements.

### B. Extraordinary and Compelling Reasons

Defendant argues first that he has demonstrated extraordinary and compelling reasons for his release because he was diagnosed with early stage fatty liver disease in 2016 and because he suffers from anxiety. (Defendant's Motion.) According to the Centers for Disease Control ("CDC"), adults *might* be at increased risk for severe illness from the virus that causes COVID-19 if they have chronic liver disease, especially cirrhosis. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020).

However, Mr. Pierson does not provide any evidence that he currently suffers from chronic liver disease or cirrhosis. In fact, he provides no evidence that his condition has progressed since 2016 in any way. Presumably, post-arrest and certainly post-incarceration, he has ceased the abuse of alcohol. And his medical records from his incarceration do not reflect that he is currently receiving any treatment for liver problems or any adverse consequences since his 2016 diagnosis.

Furthermore, Mr. Pierson has contracted and apparently recovered from COVID-19. Courts have split on the issue of whether an individual who has recovered from COVID-19 can still show extraordinary circumstances. In *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020), the court found "we do not know to what degree or duration persons are protected against reinfection . . . following recovery from COVID." *Id.* (citing CDC, *Clinical Questions About COVID-19: Questions and Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated

June 4, 2020)). "People could be immune from reinfection entirely, partially, or not at all." *Id.* (citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at 1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the Coronavirus,* Science News (May 19, 2020), http://www.sciencenews.org/article/coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last updated June 20, 2020)). Thus, the court concluded the possibility that a defendant might get re-infected and, the next time around, suffer more severe consequences, was too speculative to warrant relief. *Id.*

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists." As the court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection. Ultimately, the court in *Yellin* concluded: "The Court does not presume to have more information than the experts researching this virus. Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin." *Id.*

As this Court pointed out in *United States v. Armstrong*, No. 18-cr-5107-BAS, 2020 WL 4366015, at *3 (S.D. Cal. July 30, 2020), the Court finds it particularly persuasive that an inmate, being housed at the same facility as Mr. Pierson, was hospitalized and died after he was pronounced "recovered" by the BOP. Whatever the reason for that situation, it makes it clear that simply announcing that an inmate has "recovered," does not mean that Mr. Pierson is completely safe from the virus.

However, given the fact that the number of cases at Terminal Island now appears to be under control, and that Mr. Pierson fails to demonstrate that he has any conditions that

might make contracting COVID-19 more severe for him, the Court agrees with the Government that Mr. Pierson has failed to demonstrate extraordinary and compelling circumstances for his early release.

### C. The § 3553(a) Factors

Additionally, the Court agrees with the Government that consideration of the § 3553(a) factors in this case militate against granting compassionate release. The offense to which Mr. Pierson pled guilty was a serious one with real victims and real-life consequences. (*See* PSR ¶¶ 19–28.) The images included rape of a blind-folded one-year old and rapes of other prepubescent females. (PSR ¶¶ 6–7.) Releasing Mr. Pierson after only 30 months in custody would create unwarranted disparities with other similarly situated defendants. Therefore, considering all of the § 3553(a) factors, the Court finds that reducing Mr. Pierson's sentence would not be appropriate.

### III. CONCLUSION

Mr. Pierson has failed to demonstrate extraordinary and compelling circumstances support his request for immediate release, nor do the § 3553(a) factors support such a motion. Accordingly, the Court **DENIES** Mr. Pierson's Motion to reduce his sentence. (ECF No. 74.)

**IT IS SO ORDERED.**

DATED: October 20, 2020

Hon. Cynthia Bashant
United States District Judge